# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35273-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | ORDER AMENDING |
| | ) | OPINION |
| THOMAS J. NELSON, | ) | |
| | ) | |
| Petitioner. | ) | |

THE COURT hereby amends the dissenting opinion of Judge Robert Lawrence-Berrey that was filed on February 14, 2019.

The following sentence shall be added at the end of the last sentence on page 3, which ends "not supported by the justifications underlying the carefully drawn exceptions:"

> Absent evidence preservation concerns, a warrant should be required for blood and breath searches for alcohol.

FOR THE COURT:

ROBERT LAWRENCE-BERREY
CHIEF JUDGE



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35273-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS J. NELSON, | ) | PUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

KORSMO, J. — This court granted discretionary review of Thomas Nelson's

driving while under the influence (DUI) conviction in order to consider his challenge to

the implied consent statute. Concluding that this claim is governed by the decision in

*State v. Baird*, 187 Wn.2d 210, 386 P.3d 239 (2016) (plurality opinion), and that a breath

sample can be obtained incident to the arrest of an impaired driver, we affirm.

## FACTS AND PROCEDURAL HISTORY

This matter has a lengthy history, due in part to the fact that three trials were

required in the district court. It began with a traffic stop for speeding in Douglas County.

Trooper[1] Mark Ward stopped the vehicle being driven by Mr. Nelson for speeding across

the U.S. Highway 2 bridge from Chelan County to Douglas County.

---

[1] Ward joined the Wenatchee Police Department the following year and was a member of that department during the trial of this case.

Noticing an odor of alcohol, the trooper inquired about Mr. Nelson's use of alcohol. Admitting that he had consumed two 16-ounce cans of beer while golfing, Mr. Nelson agreed to perform physical sobriety tests. After performing the tests, the trooper arrested Mr. Nelson for DUI. He was transported to the jail and given the implied consent warnings. Mr. Nelson consented to provide breath samples. They measured .078 and .079.

Charges were filed in the Douglas County District Court. Mr. Nelson moved to suppress the breath test results on several grounds, including an argument that it was a warrantless search prohibited by *Missouri v. McNeely*, 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013). The district court denied the motion, determining that the breath test was not the product of an unlawful search. Ultimately, a jury convicted Mr. Nelson of DUI and first degree negligent driving. On appeal, the superior court affirmed the conviction. A commissioner of this court granted discretionary review to consider Mr. Nelson's argument that the breath test constituted an improper warrantless search in violation of art. I, § 7 of the Washington Constitution.

A panel of this court heard oral argument of the case.

ANALYSIS

Mr. Nelson contends that the warrantless search of his breath was prohibited by art. I, § 7 of our state's constitution. His position, which necessarily would invalidate large sections of our implied consent law, is inconsistent with our search incident to

arrest jurisprudence, and is inconsistent with the result in *Baird*. We discuss, in order,

our implied consent law and the recent federal cases involving implied consent statutes,

Washington's treatment of the search incident to arrest doctrine, and *Baird*, before

applying those discussions to Mr. Nelson's case.

*Implied Consent*

Washington's implied consent law, codified at RCW 46.20.308, was adopted by

the people of this state when they approved Initiative 242 during the 1968 election. *State*

*v. Moore*, 79 Wn.2d 51, 52, 483 P.2d 630 (1971). The acknowledged purpose of implied

consent legislation is to address the long-standing problem of drunk driving. *Id*. at 53.

Although the statute has been modified several times over the last half century, the

essence of the provision at the heart of this case reflects the trade-off approved by the

voters in 1968. That trade-off is related in the opening sentence of the statute:

> Any person who operates a motor vehicle within this state is deemed to
> have given consent, . . . to a test or tests of his or her breath for the purpose
> of determining the alcohol concentration in his or her breath if arrested for
> any offense where, . . . the arresting officer has reasonable grounds to
> believe the person had been driving . . . while under the influence of
> intoxicating liquor.

RCW 46.20.308(1).

The implied consent recognized in this statute is not final. Prior to obtaining a

breath sample, the officer must advise the driver that he or she still has the right to refuse

3

to consent to the test, but that a license revocation and use of that refusal at trial are among the consequences that follow if the driver declines the test. RCW 46.20.308(2).

The constitutionality of this statute was at issue in *Moore*. Our court concluded that the statute did not violate either the Fifth Amendment to the United States Constitution protection against self-incrimination or the protection of art. I, § 9 from being compelled to give evidence against oneself. 79 Wn.2d at 57. The court also rejected a challenge to the validity of the consent provision, finding it to be within the police power of the state to compel the breath sample. *Id*. at 57-58.

Over the years, the court has addressed other constitutional challenges to the implied consent statute. One issue addressed in *State v. Curran*, 116 Wn.2d 174, 804 P.2d 558 (1991), *abrogated in part on other grounds by State v. Berlin*, 133 Wn.2d 541, 947 P.2d 700 (1997), concerned the validity under art. I, § 7[2] of a compelled blood alcohol test under former RCW 46.20.308(3) for one suspected of vehicular homicide. *Id*. at 179, 183. The court unanimously[3] ruled that while the blood draw was a search under both the Fourth Amendment and art. I, § 7, it also was reasonable and constitutional under both provisions. *Id*. at 183-85. The court had reached the same

---

[2] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

[3] Justice Utter, joined by Justice Smith, concluded that art. I, § 7 permitted the blood draw in cases of homicide as long as there was statutory authorization. *Curran*, 116 Wn.2d at 189 (Utter, J., concurring).

conclusion in an earlier vehicular homicide case, *State v. Judge*, 100 Wn.2d 706, 711-12, 675 P.2d 219 (1984) (taking blood was a reasonable search and seizure under both constitutions).

Similarly, the United States Supreme Court on occasion has had opportunity to consider challenges to various aspects of state implied consent laws. *E.g.*, *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (due process did not require preservation of breath sample tested by state); *South Dakota v. Neville*, 459 U.S. 553, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983) (State could use evidence of refusal to consent to blood alcohol test at trial without offending privilege against self-incrimination); *Mackey v. Montrym*, 443 U.S. 1, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979) (due process did not require hearing prior to revocation of driver's license for refusal to consent to testing).

That Court also has had the opportunity to consider blood alcohol testing cases that arose outside of a state's implied consent law. In *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), the Court faced a situation where officers at a hospital had obtained a blood sample from a suspected drunk driver who had refused to consent to the blood draw. 384 U.S. at 758-59. After concluding that the Fifth Amendment did not apply, the Court turned to the Fourth Amendment. *Id*. at 760-66. Recognizing that a search warrant "ordinarily" would be required, the court nonetheless upheld the search due to the dissipation of alcohol and the delay caused by taking the

5

defendant to the hospital. *Id*. at 770-72. In those circumstances, the acquisition of the blood alcohol "was an appropriate incident to petitioner's arrest." *Id*. at 771.

Nearly a half century later, the Court revisited *Schmerber* in *Missouri v. McNeely*, 569 U.S. 141. As in the earlier case, the suspected drunk driver refused to consent to a test and blood was thereafter taken from him at a hospital. *Id*. at 145-46. After the lower courts had suppressed the evidence, the United States Supreme Court considered Missouri's argument that *Schmerber* authorized a per se rule permitting the warrantless taking of blood in all drunk driving cases. *Id*. at 146-48. Rejecting the per se rule, the Court stressed that the exigent circumstances exception was *always* dependent on the totality of the circumstances. *Id*. at 156. In its analysis, the Court noted that a search incident to arrest was a categorical exception to the warrant requirement and did "not require an assessment of whether the policy justifications underlying the exception, which may include exigency-based considerations, are implicated in a particular case." *Id*. at 150 n.3. Because there was no exigency established, the Court affirmed the suppression ruling. *Id*. at 165.

The Court soon thereafter had the opportunity to look at the intersection of state implied consent laws and the Fourth Amendment in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed 2d 560 (2016). At issue in those consolidated cases were state implied consent laws that purported to offer a choice to refuse testing, but then treated a refusal as a crime. 195 L. Ed. 2d at 571-74. One petitioner was convicted of a

crime for refusing to take a blood test, one was convicted for refusing to take a breath test, and the third consented to a blood test, but lost his license as a consequence of the test results. *Id.* Noting that exigent circumstances were not at issue in the consolidated cases, the Court turned to the issues presented: (1) the application of the search incident to arrest doctrine to the breath and blood tests, and (2) the effect of criminalizing a refusal to consent on the informed consent decision. *Id.* at 574.

The Court stated that it had been recognized long before the constitution was adopted that officers could lawfully search the person they had arrested. *Id.* at 576-78. The Court stressed that the search incident to arrest exception was categorical, its prior decision in *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014), notwithstanding. *Id.* at 578, 586. When confronted with the scope of a search incident to arrest for evidence or items not existent at the time the constitution was adopted, the Court applied a two-part test created in *Riley* that looked at the degree of intrusion on an individual's privacy and the governmental interest. *Id.* at 578-79.

Applying the *Riley* test, the *Birchfield* Court concluded that a warrantless breath test was a proper search incident to an arrest because it did not implicate significant privacy concerns. *Id.* at 579-80, 587. With respect to blood testing, however, the bodily intrusion of seizing blood was not within the scope of a search incident to arrest. *Id.* at 580, 587. Blood testing was significantly more invasive than breath testing. *Id.* at 580.

The Court then briefly turned to the impact of implied consent laws on the cases. Noting that it generally had approved implied consent statutes that imposed noncriminal penalties for refusal, the Court concluded that its decision did not cast doubt on such legislation. *Id*. at 588-89. However, imposition of criminal penalties for refusing to consent to a search presented a new matter entirely: "There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id*. at 589. The Court then concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id*.

The Court then turned to the disposition of the three cases before it. The Court overturned the conviction of the driver who was convicted of a crime for refusing a blood draw, but upheld the conviction of the driver who had refused a breath test. *Id*. The Court remanded the case of the driver whose license was suspended after he consented to a blood draw on pain of criminal prosecution. In that instance, the lower court was required to determine whether the driver's consent was valid in light of the improper advice given to him. *Id*. at 589-90.

In summary, the Court concluded that states could compel warrantless breath tests under their implied consent laws, but could not compel warrantless blood tests. States were free to impose criminal penalties for refusing a breath test, but not for refusing to consent to a blood draw. Although administrative and evidentiary sanctions could be

8

imposed for refusing to consent to either blood or breath testing, those sanctions needed to be based on correct legal advice. State implied consent laws concerning breath testing remain valid.

*Search Incident to Arrest in Washington*

Mr. Nelson contends that Washington treats searches incident to arrest differently than the United States Supreme Court and would not consider breath testing within the scope of that search. His argument requires us to consider Washington's treatment of the search incident to arrest doctrine vis-à-vis the federal standard.

Modern federal analysis of the search incident to arrest doctrine traces to *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). There police had arrested a man and found a cigarette package containing heroin in his coat pocket. 414 U.S. at 222-23. The Court concluded that the search was proper incident to the arrest, recognizing that while the scope of the search of the area around an arrestee had varied over the years, the Court had always permitted searches of the arrestee's person. *Id.* at 224-26. The Court concluded that two purposes undergirded the search: the need for officer safety and the need to preserve evidence. *Id.* at 234-35. The authority to search the person was categorical and did not need to be justified by either of the two purposes supporting the search incident doctrine. *Id.* at 235. In turn, area searches were governed by the rule of *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d

9

685 (1969). The question presented there was whether the area was within the arrestee's "'immediate control.'" 395 U.S. at 763.

Washington likewise has recognized the same two purposes, both before and after *Robinson*, as the justification for a search incident to arrest under the Washington Constitution. *State v. Brock*, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015); *State v. Hughlett*, 124 Wash. 366, 370, 214 P. 841 (1923) ("It has always been held that a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested."), *overruled on other grounds by State v. Ringer*, 100 Wn.2d 686, 699, 674 P.2d 1240 (1983). In turn, Washington recognizes the same scope for the two possible searches incident to arrest:

> A warrantless search of the arrestee's person is considered a reasonable search as part of the arrest of the person. Such a search presumes exigencies and is justified as part of the arrest; therefore it is not necessary to determine whether there are officer safety or evidence preservation concerns in that particular situation. In contrast, a warrantless search of the arrestee's surroundings is allowed only if the area is within an arrestee's "immediate control." Such searches are justified by concerns of officer safety or the preservation of evidence and are limited to those areas within reaching distance at the time of the search.

*State v. MacDicken*, 179 Wn.2d 936, 940-41, 319 P.3d 31 (2014) (internal citations omitted).

The theoretical justifications for a search incident to arrest are the same under both state and federal constitutions. Similarly, the areas that can be searched—the person of the arrestee and the area within his reach—are the same.

10

*State v. Baird*

At issue in the two consolidated cases in *Baird* was whether evidence of refusal to submit to breath testing was admissible after *McNeely*.[4] The drivers argued that the search was unconstitutional and, therefore, they had a constitutional right to refuse consent and the State could not use that choice against them. 187 Wn.2d at 212-13. Our court issued three opinions: a lead opinion by Justice Madsen expressing the views of four justices, a concurring opinion by Justice González that was joined by Justice Yu, and a dissent by Justice Gordon McCloud that expressed the view of three justices.

The lead opinion concluded that (1) the implied consent statute did not authorize a warrantless search, (2) there was no constitutional right to refuse a breath test because it was a valid search incident to arrest, and (3) evidence of refusal to consent was admissible as evidence of guilt under the implied consent statute. *Id*. at 214. With respect to the constitutionality of the breath test search, the drivers argued that the searches were unconstitutional under both the Fourth Amendment and art. I, § 7. *Id*. at 221-22. The lead opinion promptly answered that argument by turning to *Birchfield*: "[T]ests conducted subsequent to an arrest for DUI fall under the search incident to arrest exception to the warrant requirement." *Id*.

---

[4] *Birchfield* was released a year after argument in *Baird* and six months prior to the release of the *Baird* opinion.

Justice González wrote separately to emphasize that a breath test after an arrest for DUI "is a limited and reasonable search" and that refusal to consent "has no constitutional implications" under the Fourth Amendment or art. I, § 7. *Id*. at 229 (González, J., dissenting). He also agreed that the search incident to arrest doctrine was categorical and applied to this case. *Id*. at 231 n.10. He questioned whether there was any reasonable expectation of privacy in a driver's breath subsequent to an arrest for DUI. *Id*. at 231. Turning then to the "authority of law" component of art. I, § 7, he focused on the lengthy history of the implied consent law in this state and the minimal intrusiveness of a breath test to conclude that a DUI driver's private affairs were not disturbed by the testing. *Id*. at 231-32.

The dissent criticized the majority for applying the search incident to arrest analysis of *Birchfield*[5] under our constitution, contending that doctrine in Washington had never "applied it to bodily contents." *Id*. at 234-35 (Gordon McCloud, J., dissenting). The dissent also took issue with the lead opinion's view that the implied consent law acted to waive challenges to the admissibility of refusal evidence. *Id*. at 237.

In summary, a majority of the court concluded that a breath test conducted under our implied consent law is a valid search incident to arrest under our state constitution.

---

[5] Our dissenting colleague misreads the *Baird* dissent. The dissenters challenged the lead opinion's analysis under art. I, § 7. They did not claim that the lead opinion failed to address the art. I, § 7 argument. *See* 187 Wn.2d at 234 (Gordon McCloud, J., dissenting); *cf.*, 187 Wn.2d at 222 (lead opinion).

No. 35273-1-III
*State v. Nelson*

*Application to Mr. Nelson's Case*

With apologies for that lengthy introduction, we can finally turn to the claim

presented by Mr. Nelson. Criticizing[6] the failure of the *Baird* Court to conduct an

analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986), he ignores the rule

of that case while conducting his own *Gunwall* analysis. He contends that the search

incident to arrest doctrine[7] is not applicable to "non-physical data such as alcohol

concentration." Br. of Appellant at 14.

Unlike Mr. Nelson, this court does not have the luxury of ignoring *Baird*. *E.g.*,

*State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984) (lower courts are bound by

ruling of Washington Supreme Court). While the outcome of *Baird* ultimately is

dispositive of this case, we nevertheless have to consider his *Gunwall* argument in order

to reach that conclusion.

Under art. I, § 7, the consideration is whether a defendant's "private affairs" have

been invaded without authority of law. *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d

151 (1984). That term "focuses on those privacy interests which citizens of this state

---

[6] Br. of Appellant at 12.

[7] Mr. Nelson also argues that the purposes of the search incident to arrest doctrine do not support taking breath alcohol samples. We disagree. Although the dissipation of alcohol in the blood stream does not by itself constitute an exigency, the dissipation still is a relevant consideration in rapidly obtaining a sample to preserve the evidence. A search conducted incident to the arrest provides the most timely evidence of DUI.

13

have held, and should be entitled to hold, safe from governmental trespass absent a warrant." *Id*. at 511.

*Gunwall* set forth six nonexclusive criteria to be applied when analyzing whether to accord a provision of the state constitution a different reading than that given to parallel provisions of the federal constitution. 106 Wn.2d at 61. Those criteria are:

> 1. The textual language of the state constitution.
> 2. Significant differences in the texts of parallel provisions of the federal and state constitutions.
> 3. State constitutional and common law history.
> 4. Preexisting state law.
> 5. Differences in structure between the federal and state constitutions.
> 6. Matters of particular state interest or local concern.

*Id*. at 61-62. Because criteria 1, 2, 3, and 5 were analyzed in *Gunwall* with respect to art. I, § 7 and the Fourth Amendment, they need not be addressed on every occasion when comparing those two provisions; only criteria 4 and 6 need to be analyzed. *State v. Hudson*, 124 Wn.2d 107, 120, 874 P.2d 160 (1994); *State v. Boland*, 115 Wn.2d 571, 576, 800 P.2d 1112 (1990). In essence, the four fixed *Gunwall* factors address whether a provision can be interpreted differently, while the other two ask whether it should be so interpreted in the context of the particular case.

Here, Mr. Nelson argues that pre-existing law favors diverging from *Birchfield*, focusing on cases where Washington has found that the privacy protections of art. I, § 7

prohibit interference with bodily functions.  *E.g.*, *Blomstrom v. Tripp*, 189 Wn.2d 379, 402 P.3d 831 (2017) (urinalysis required from DUI defendants released pending trial unconstitutional without statutory authorization); *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 178 P.3d 995 (2008) (school policy requiring mandatory urinalysis testing of student athletes struck down).  He also argues that cases from other states should be considered in determining whether to follow *Birchfield*.  Although cases from other states construing constitutional provisions similar to ours could be informative, the mere fact that some other states disagree with *Birchfield* is not "pre-existing law" under *Gunwall* that provides much aid to construing the scope of the Washington Constitution.

We believe that Mr. Nelson's focus on this factor is inaccurate.  At issue is the search incident to arrest exception to the warrant requirement.  Our case law in this area does not favor Mr. Nelson's position.  As detailed previously, the search incident to arrest doctrine under art. I, § 7 not only serves the same purposes (evidence preservation, officer safety)[8] as the Fourth Amendment, but our analysis[9] of a search incident to arrest has been the same, particularly in the area of impaired drivers arrested and tested under the implied consent statute.  Thus, both *Judge* and *Curran* recognized warrantless blood

---

[8] *Brock*, 184 Wn.2d at 154.
[9] *MacDicken*, 179 Wn.2d at 940-41.

draws as lawful searches under art. I, § 7 prior to the United States Supreme Court revising its view of the requirements of the Fourth Amendment in *McNeely*.[10]

After the United States Supreme Court reconsidered its Fourth Amendment treatment of state implied consent laws in *Birchfield*, it reaffirmed that breath testing did not implicate the federal constitution despite *McNeely*. When confronted with the *Birchfield* issue in *Baird*, a majority of our court determined that warrantless breath testing of suspected impaired drivers was valid under art. I, § 7. Regardless of what Mr. Nelson may think of the adequacy of *Baird*'s analysis, the result is clearly the most relevant example of pre-existing state law on his issue.

None of the most relevant case authority supports Mr. Nelson. He relies principally on the fact that Washington cases do not permit a search of a locked[11] container found in the course of an arrest, citing to *State v. VanNess*, 186 Wn. App. 148, 162, 344 P.3d 713 (2015) (locked box in backpack was not subject to search incident to arrest). That case, in addition to being unique, is clearly distinguishable, even if we assume that a backpack in one's possession at the time of arrest is the same as an item on

---

[10] After *McNeely*, the legislature promptly amended the implied consent statute to ensure that blood could be obtained from an impaired driver by means of a search warrant. *See* LAWS OF 2013, 2d Spec. Sess., ch. 35, § 36.

[11] Unlocked containers found on an arrestee's person are subject to search. *E.g.*, *State v. White*, 44 Wn. App. 276, 278, 722 P.2d 118 (1986) (cosmetics case was subject to search incident to arrest); *State v. Garcia*, 35 Wn. App. 174, 176, 665 P.2d 1381 (1983) (wallet was subject to search incident to arrest).

the person. Borrowing from our case law on inventory searches, the *VanNess* court ruled that locked containers found near an arrestee could not be searched without a warrant, relying on two automobile search cases involving locked containers that had been analyzed under the *Chimel* area analysis. *Id*. at 160-61. We do not believe that police can do indirectly what they cannot do directly. Locked containers are not searchable in the course of an inventory search, and that fact should not change just because the container was found in close proximity to an arrestee. *VanNess* is only marginally helpful to an analysis of the fourth *Gunwall* factor in this context.[12]

Even if we consider searches incident to arrest outside of the impaired driver context, as appellant does, pre-existing law is not particularly helpful to Mr. Nelson. One example is *State v. Cheatam*, 150 Wn.2d 626, 81 P.3d 830 (2003). There police had arrested the defendant and placed his clothing, including a pair of shoes, in storage at the jail. *Id*. at 642. The court concluded that the defendant had no reasonable expectation of privacy in property that he had exposed to the public (and police) view. *Id*. In a similar vein, although not a search incident to arrest case, is *State v. Surge*, 160 Wn.2d 65, 156 P.3d 208 (2007). There the court upheld, also against an art. I, § 7 challenge, a statute that authorized the taking of DNA samples from those convicted of felonies. *Id*. at 71-74

---

[12] *VanNess* also read *Riley v. California* as rejecting a categorical approach to searches incident to arrest. 186 Wn. App. at 156-60. Two years later, the *Birchfield* court rejected that reading of *Riley* and reaffirmed the categorical nature of a search incident to arrest. *Birchfield*, 195 L. Ed. 2d at 578, 586.

(lead opinion), 83 (Owens, J. concurring).  In contrast to *Surge*, a DNA swab of a person

awaiting trial can only be ordered by a judge who determines that probable cause exists

to take the sample.  *State v. Garcia-Salgado*, 170 Wn.2d 176, 240 P.3d 153 (2010).

There the court distinguished *Judge* and *Curran* due to the fact that DNA, unlike alcohol,

does not dissipate and, therefore, can await judicial authorization.  *Id*. at 185.  The court

also concluded that the warrant requirement can be satisfied by a court order.  *Id*. at 186.

Given the extensive number of cases litigated under art. I, § 7, undoubtedly other

case examples could be discussed.  However, we believe we have identified, and

discussed, the most relevant authorities.  In this context, the fourth *Gunwall* factor does

not favor finding a greater privacy right in breath alcohol testing.  If anything, our history

strongly suggests that arrestees have a diminished expectation of privacy in their breath

alcohol levels.

The sixth *Gunwall* factor is whether the issue is of particular state interest or local

concern.  *Gunwall*, 106 Wn.2d at 62.  How one views this factor depends in large part on

how the issue is framed.  If the question is defined at a high level of generality, such as

one of personal privacy or enforcement of state law, the factor will always favor an

independent interpretation.  However, our court does not consider this a fixed, static

factor, so we believe that the true question is focused on the specific privacy right

claimed—whether a driver arrested on the public highways has a privacy interest in his

breath alcohol.  Although there is strong national interest in the problem of impaired

18

driving, and the national highway system represents a significant portion of the public roadways, we still consider the issue to primarily be one of local concern. Thus, this *Gunwall* factor somewhat favors Mr. Nelson's argument for greater privacy than that afforded by the Fourth Amendment.

Nonetheless, in light of the long history of both our implied consent statute and of our case law rejecting arguments for giving art. I, § 7 an expanded interpretation in this context, we decline Mr. Nelson's argument to ignore *Baird* and reach a different result than that court did. Washington does not have a history of recognizing expanded privacy protection for an arrested driver's blood or breath alcohol level. We therefore conclude that the implied consent law provides authority of law to conduct a warrantless breath test[13] as a search incident to arrest and, thus, Mr. Nelson's consent to provide breath samples was valid.

We are not unmindful of the consequences of accepting Mr. Nelson's argument for rejecting application of the search incident to arrest doctrine in this context.[14]

---

[13] According to the 2016 statistics of the Federal Bureau of Investigation, there were 23,209 arrests in this state for DUI. *See* https://ucr.fbi.gov/crime-in-the-u.s/2016 /crime-in-the-u.s.-2016/topic-pages/tables/table-22 (last visited Feb. 7, 2019). It would be a daunting problem to provide judges to cover 23,000 additional search warrants across the state.

[14] At oral argument, Mr. Nelson's attorney agreed that fingerprinting an arrestee could not be justified under either rationale of the search incident to arrest doctrine. *See* oral argument, December 5, 2018, No. 352731, at 10:49:04: http://www.courts.wa.gov /appellate_trial_courts/appellateDockets/index.cfm?fa=appellateDockets.showDateList& courtId=a03.

No. 35273-1-III
*State v. Nelson*

Requiring a warrant for each breath test would render the current implied consent warnings of RCW 46.20.308(2) inaccurate, leading to the suppression of test results in all pending cases. *E.g.*, *State v. Whitman County Dist. Court*, 105 Wn.2d 278, 286-87, 714 P.2d 1183 (1986). Very little of the implied consent law would remain valid—and even less of it would be useful—and it is difficult to conceive of how a revised law could be crafted if there is indeed a state constitutional right to refuse the search. It also is questionable how well a search warrant could compel a valid breath sample if there were no valid consequences for refusing to comply. As a practical matter, blood would probably be drawn in every instance where a search warrant was obtained. These concerns do not factor into our analysis, but they do provide a further caution against a radical reversal of 50 years of precedent and practice.

The judgment of the district court is affirmed.

_____
Korsmo, J.

I CONCUR:

_____
Siddoway, J.

20

No. 35273-1-III

LAWRENCE-BERREY, C.J. (dissenting) — The majority does a masterful job setting forth Washington State and federal decisions discussing implied consent laws and the search incident to arrest exception to the warrant requirement. I dissent because I disagree with the majority on two points.

First, the majority misconstrues the lead opinion in *State v. Baird*, 187 Wn.2d 210, 386 P.3d 239 (2016) (plurality opinion). The majority construes the lead opinion as answering no to whether article I, section 7 of the Washington Constitution prohibits a warrantless breath test. Similar to the *Baird* dissent, I construe the lead opinion as not answering the state constitutional question:

> It is surprising that the lead opinion begins and ends its answer to this question with the Fourth Amendment [to the United States Constitution]. Our court has consistently recognized that "[a]rticle I, section 7 is more protective of individual privacy than the Fourth Amendment, and we turn to it first when both provisions are at issue." The lead opinion doesn't even turn to article I, section 7 second.
> . . . I think we should turn to article I, section 7 first. . . .

*Baird*, 187 Wn.2d at 234-35 (second alteration in original) (citations omitted) (Gordon McCloud, J., dissenting). The lead opinion did not even respond to or deny the dissent's point that it failed to decide the state constitutional question. Because the lead opinion in *Baird* did not decide the state constitutional question, our resolution of that issue is not controlled by *Baird*.

Second, the majority misconstrues *State v. MacDicken*, 179 Wn.2d 936, 310 P.3d 31 (2014), which cited *State v. Byrd*, 178 Wn.2d 611, 310 P.3d 793 (2013). Those cases do say that a search of an arrestee's person and personal effects "always implicate[s] *Chimel*[1] concerns for officer safety and evidence preservation." *Byrd*, 178 Wn.2d at 618 (search of purse on lap of the defendant); *accord MacDicken*, 179 Wn.2d at 940-41 (search of bag carried by the defendant). The statement, although true for purses and bags on a defendant, is not true for blood and breath. It is hard to imagine how alcohol in the blood or breath of a defendant presents an officer safety concern. Yet, it is possible to imagine how the natural dissipation of alcohol in the blood or breath raises evidence preservation concerns. In those instances where the natural dissipation of alcohol in the blood or breath precludes obtaining a warrant, the exigent circumstances exception to the warrant requirement applies. *See Baird*, 187 Wn.2d at 220-21 (natural dissipation of alcohol in blood or breath may support finding of exigent circumstances, but "exigency" must be determined on case-by-case basis). But as noted by Justice Sotomayor in her dissent in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 2192-93, 195 L. Ed. 2d 560 (2016), the ease of quickly obtaining telephonic warrants renders the natural dissipation of alcohol in one's blood or breath an uncommon concern.

These observations lead me to ask: Just how jealously do Washington courts guard the exceptions to the warrant requirement for searches? In most cases involving article I,

---

[1] *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), *overruled in part by Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

section 7, we reiterate: "Under article I, section 7, a warrantless search is per se unreasonable unless the State proves that one of the few 'carefully drawn and jealously guarded exceptions' applies." *Byrd*, 178 Wn.2d at 616 (quoting *State v. Bravo Ortega*, 177 Wn.2d 116, 122, 297 P.3d 57 (2013)). The answer to my question depends on whether we permit warrantless searches to expand beyond the justifications that underlie the carefully drawn exceptions to the warrant requirement.

In *State v. Valdez*, 167 Wn.2d 761, 774-75, 224 P.3d 751 (2009), our highest court unanimously held:

> [T]he search incident to arrest exception has been stretched beyond these underlying justifications, permitting searches beyond what was necessary for officer safety and preservation of the evidence of the crime of arrest. This trend in article I, section 7 jurisprudence was substantially adopted from a similar trend in Fourth Amendment jurisprudence. As characterized by Justice Frankfurter in the Fourth Amendment context, the trend of cases "merely prove[s] how a hint becomes a suggestion, is loosely turned into dictum and finally elevated to a decision." *United States v. Rabinowitz*, 339 U.S. 56, 75, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (Frankfurter, J., dissenting).
> . . . .
> [This trend was because] cases departed from the principles upon which the search incident to arrest exception was based and have since been overruled. Yet they serve as clear reminders of the danger of wandering from the narrow principled justifications of the exception, even if such wandering is done an inch at a time. . . .

(Second alteration in original; some citations omitted.) I would jealously guard our individual liberties by requiring warrants for searches not supported by the justifications underlying the carefully drawn exceptions.

3

The majority opinion ends by noting various concerns with requiring warrants for most breath searches. These concerns are overstated.

First, the implied consent warnings can be withdrawn and substituted by a warning that if the person does not consent to provide a breath sample, the officer will request a telephonic warrant from a judge. As noted in Justice Sotomayor's dissent, requiring warrants for most breath tests would not overly task the judiciary: "[A] significant majority of drivers voluntarily consent to breath tests, even in states without criminal penalties for refusal." *Birchfield*, 136 S. Ct. at 2193 (Sotomayor, J., dissenting).

Second, law enforcement might start warning persons now, that if they refuse to consent to a breath test, law enforcement will request a telephonic warrant from a judge. This warning will prompt actual consent to a breath test in the vast majority of cases. For those few who do not consent, a telephonic warrant can be requested. If after obtaining a telephonic warrant a person persists in refusing to provide a sample, law enforcement can give the additional implied consent warnings. Adjusting to this practice now will prevent the harsh result, possible in the future, that warrantless breath tests will be suppressed.

Lawrence-Berrey, C.J.

4